# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 7, 2005          Decided January 10, 2006

No. 04-5216

CHRISTINE M. HOLCOMB,
APPELLANT

v.

DONALD E. POWELL, CHAIRMAN, FEDERAL DEPOSIT
INSURANCE CORPORATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01550)

*Ellen K. Renaud* argued the cause for appellant. With her on the briefs were *David H. Shapiro* and *Richard L. Swick*.

*Michael J. Ryan*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *Diane M. Sullivan*, Assistant U.S. Attorney, and *Lawrence H. Richmond*, Counsel, Federal Deposit Insurance Corporation. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS and BROWN, *Circuit Judges,* and

WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Plaintiff Christine Holcomb filed suit against her employer, the Federal Deposit Insurance Corporation (FDIC), alleging two violations of Title VII of the Civil Rights Act of 1964: first, discrimination against her on the basis of race when the corporation failed to select her for a promotion; and second, retaliation against her in the form of reduced work responsibilities when she filed a discrimination complaint following the non-promotion. The district court granted summary judgment for FDIC on both the discrimination and retaliation claims. We conclude the record does not contain sufficient evidence from which a jury could infer that FDIC engaged in prohibited racial discrimination when it selected a white applicant for the disputed position, and we affirm the grant of summary judgment on Holcomb's discrimination claim. Contrary to the district court, however, we conclude Holcomb has established a prima facie case of retaliation, and we reverse the grant of summary judgment on her retaliation claim.

I

In 1991, Christine Holcomb, an African-American woman, began working for the Resolution Trust Corporation (RTC) as a Grade 7 Secretary. In late 1995, after RTC merged with FDIC, Holcomb moved to FDIC, and her career prospered. Within three years, she was a Grade 11 Program Specialist in the Office of Diversity and Economic Opportunity (ODEO).

In early 1999, ODEO underwent a series of reorganizations initiated by Vijay Deshpande, the acting director, in an effort to streamline the Equal Employment Opportunity (EEO) complaint

process. In February of that year, Anna Mergele, an Asian-American female attorney from FDIC's legal division, began a detail to ODEO to serve as acting chief of the Complaints branch in order to reduce a backlog of unresolved EEO complaints. For about six weeks, Mergele was Holcomb's immediate supervisor, but Holcomb was in transition, having applied for and been selected to serve on a year-long detail to FDIC's Division of Compliance and Consumer Affairs (DCA) to work on Y2K-related issues. Despite needing Holcomb's help with the ODEO backlog, Mergele approved the detail. Holcomb had indicated a strong interest in the position and Mergele viewed it as a unique opportunity.

When Holcomb left for DCA, Mergele requested Amy Del Valle, a certified paralegal within FDIC's legal division, where Mergele had previously been employed, be detailed to ODEO. Del Valle, a white female, had joined RTC in March 1991 as a Grade 9 Paralegal and, in 1992, was promoted to Grade 11 Paralegal, her position at the time Mergele made her request. Mergele had worked with Del Valle before and requested the detail because Holcomb's departure exacerbated the need for assistance with the complaint backlog.

Meanwhile, Holcomb sought to cut short her DCA tenure and return to ODEO. Mergele was amenable to Holcomb's request but lacked authority to make the decision; however, the ODEO director insisted that Holcomb fulfill ODEO's obligation to DCA. Holcomb remained at DCA until March 2000 but would, on her own initiative, work on ODEO matters during lunch breaks or after regular business hours.

In August 1999, Holcomb received a disappointing annual performance evaluation, covering the period from September 1998 to August 1999 — a period during which she had worked

at both ODEO and DCA. Because Mergele's period of supervision had been so brief, Gregory Cofer actually completed the evaluation, which Mergele signed. Holcomb's DCA supervisor proposed a 3 rating for "analytical/technical skills"; Cofer reduced that rating to a 2, which lowered Holcomb's overall rating from "outstanding" to "superior."

In October 1999, ODEO advertised for a new position, Grade 12 Program Specialist. Both Holcomb, on detail to DCA at the time, and Del Valle applied for the job, and the personnel department identified them as the only two candidates who met the minimum qualifications. Mergele, the selecting official, interviewed both women and ultimately selected Del Valle. Shortly after learning of Del Valle's selection, on January 19, 2000, Holcomb filed a formal administrative discrimination complaint, primarily alleging discrimination because of race, age, and disability based on ODEO's failure to promote her. The complaint also alleged the repeated denials of Holcomb's requests to return to ODEO from her DCA detail and the 1998-99 job evaluation that rated Holcomb's performance as merely "superior" rather than "outstanding" were motivated by illegal discrimination.

When Holcomb's DCA detail ended in March 2000 and she returned to ODEO, she was assigned to a reorganized Formal Complaints section, where Michael Moran, an Asian-American male, served as her supervisor. Holcomb, still a Grade 11 Program Specialist, quickly became dissatisfied with the low level of her job responsibilities, which were primarily clerical. Moran's attempts to assign suitable tasks failed. Holcomb objected to certain tasks, believing they were not commensurate with her grade, and lacked familiarity with other tasks requiring greater skill and experience.

In approximately May 2001, Holcomb expressed apprehension to Vincent Johnson, an African-American male and Deputy Director of ODEO, that her job was being eroded and she feared a demotion. Johnson sought to give Holcomb assignments more commensurate with her grade but remained concerned about Holcomb's lack of meaningful work. Accordingly, Johnson supervised a desk audit in February 2002, which ultimately revealed Holcomb was performing Grade 5 work. Subsequently, Johnson and Moran, with input from Mergele, wrote a new Grade 11 Equal Opportunity Specialist position description for Holcomb covering duties available within the Complaints section, which was approved in August 2002 and remediated Holcomb's under-utilization. At no time was Holcomb ever threatened with demotion, nor did management ever discuss the possibility.

Holcomb filed a second formal administrative complaint on April 8, 2002. In alleging discrimination, harassment, and hostile work environment, the complaint charged that Mergele and Moran deliberately withheld duties from Holcomb to the detriment of her career; that they provided Del Valle with assignments designed to enhance her opportunities for promotion; and that Mergele unfairly criticized Holcomb during a March 2002 meeting reviewing a report Holcomb had helped to assemble.

Holcomb had already filed a complaint on July 17, 2001, in the United States District Court for the District of Columbia, alleging racial discrimination and retaliation in violation of Title VII, based, in part, on FDIC's failure to select her for the Grade 12 Program Specialist position.[1] On April 17, 2003, Holcomb

---

[1] By this time, Holcomb had also engaged in lengthy correspondence with various government agencies about the status of

filed an amended complaint. The amended complaint again alleged racial discrimination and retaliation but supplemented Holcomb's claims with the results of the desk audit and the treatment received from Mergele at the March 2002 meeting. FDIC moved for summary judgment on both counts. The district court granted the motion, and Holcomb appealed.

II

We review the grant of summary judgment de novo. *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed pursuant to discovery show that, first, "there is no genuine issue as to any material fact" and, second, "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, we view the evidence in the light most favorable to Holcomb and draw all reasonable inferences in her favor; we are not to make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

"The mere existence of *some* alleged factual dispute between the parties" will not defeat summary judgment; "the requirement is that there be no *genuine* issue of *material* fact."

---

her first administrative complaint. In February and March of 2000, she complained to senior FDIC officials via email and letter that proper EEO procedures were not being followed. In July, August, and December of 2000, and in January, March, and May of 2001, she wrote seven letters to EEOC officials and administrative judges about other purported procedural deficiencies. Holcomb copied FDIC officials on several of these letters.

*Anderson*, 477 U.S. at 247-48. A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. *Id.* at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A

We begin with Holcomb's discrimination claim. Title VII of the Civil Rights Act of 1964 prohibits federal agencies, including government corporations like FDIC, from discriminating in employment on the basis of race. 42 U.S.C. § 2000e-16 (2000); *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000). Where, as here, the record contains no direct evidence that the adverse employment action of which the plaintiff complains was caused by prohibited discrimination, we turn to the the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to analyze the claim. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). Under this framework, the plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she applied for and was qualified for an available position; (3) despite her qualifications, she was rejected; and (4) either someone filled the position or it remained vacant and the employer continued to seek applicants. *Id.*

FDIC does not dispute, and we agree, that with respect to

her non-promotion to the Grade 12 Program Specialist position, Holcomb has established a prima facie case of discrimination. An African-American woman, Holcomb applied for the position, and personnel identified her as one of two candidates with the minimum qualifications. Holcomb was not promoted; the position went to Del Valle. Thus, Holcomb satisfied the purpose of the initial step of the *McDonnell Douglas* framework: neither an absolute or relative lack of qualifications nor the absence of a vacancy in the job sought prevented her promotion. *See Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977); *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 650-51 (D.C. Cir. 2003).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to produce evidence that the plaintiff was rejected for a legitimate, nondiscriminatory reason. *Reeves*, 530 U.S. at 142; *Lathram*, 336 F.3d at 1088. FDIC has met its burden in this case. In an affidavit, Mergele, the selecting official for the disputed position, stated she chose Del Valle "because she was the best applicant" and "the person with the best skills and abilities to do the job should be selected." Mergele explained what she sought in a successful applicant, including the ability to track EEO investigations, follow up with contract investigators as problems arose, and coordinate the Alternative Dispute Resolution (ADR) program and related issues. She was looking for an individual who had an in-depth understanding of "the entire administrative EEO complaint process" and could "coordinate all phases of ADR and investigations." The skills Mergele cited in her affidavit align with those in the job description, such as "[c]oordinat[ing] Branch responses to discovery requests from the Legal Division for cases pending before the administrative tribunal and in district court," "[s]erv[ing] as the technical monitor for all contracting activity of the Branch," and "[s]erv[ing] as the principal contact and

coordinator of the Agency's Mediation Program."

In Mergele's view, Del Valle was more qualified for the position than Holcomb because Del Valle's background as a paralegal and EEO counselor gave her a broader understanding of the administrative EEO complaint and district court process as well as more hands-on experience than Holcomb. Since beginning her ODEO detail, Del Valle had assisted in processing EEO complaints, begun coordinating the ADR program, and helped to develop a method to track EEO investigations. Moreover, during her time at FDIC's Legal Division, she worked on all phases of EEO complaints before the administrative agency and the district court. By contrast, Mergele stated in her affidavit, Holcomb had not worked on the ADR program or EEO investigations while under Mergele's supervision, nor did her application indicate any related work experience. Mergele's qualifications-based justification constitutes a legitimate, nondiscriminatory reason for the allegedly discriminatory action, and as FDIC's burden is merely one of production, it has satisfied the second prong of *McDonnell Douglas*.

FDIC having offered a nondiscriminatory explanation for its actions, the presumption of discrimination "simply drops out of the picture." *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)) (internal quotation mark omitted); *see also Morgan*, 328 F.3d at 651 ("If the defendant produces such evidence [of a nondiscriminatory reason], the *McDonnell Douglas* framework — with its presumptions and burdens — disappears, and the sole remaining issue is discrimination *vel non*." (quoting *Reeves*, 530 U.S. at 142-43) (internal quotation marks and brackets omitted)). At this point, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a

discriminatory reason." *Lathram*, 336 F.3d at 1088. By "all of the evidence," we mean any combination of (1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).

1

Although Holcomb might have relied on any of these three categories of evidence, she primarily challenges Mergele's qualifications-based explanation for hiring Del Valle. We have consistently declined to serve as a "super-personnel department that reexamines an entity's business decisions." *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986)) (internal quotation marks omitted); *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates."). In *Aka*, however, we concluded a factfinder could infer discrimination if the evidence showed a reasonable employer would have found the plaintiff *significantly* better qualified for the job but nevertheless failed to offer the position to her. *Aka*, 156 F.3d at 1295. We did not require a plaintiff to establish this disparity in order to survive a motion for summary judgment, though, and the district court erred by doing so here. Indeed, we emphasized that a plaintiff attacking a qualifications-based explanation is expressly *not* limited to comparing her qualifications against those of the successful applicant; she may seek to expose other flaws in the employer's explanation,

including, *inter alia*, showing the employer has misstated her qualifications. *Id.* Here, Holcomb attempts to establish not only that she is significantly better qualified than Del Valle, but also that her employer substantively misstated her qualifications.

"In a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Id.* at 1294. In order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination. *See Lathram*, 336 F.3d at 1091 (citing a "wide and inexplicable gulf" between candidates). In *Aka*, for example, we determined the evidentiary record was sufficient for a reasonable jury to conclude the plaintiff, who was denied a pharmacy technician job, was "markedly more qualified" than the applicant who received the position. 156 F.3d at 1299. There, the plaintiff presented undisputed evidence that he had nineteen years of experience as a hospital assistant as well as bachelor's and master's degrees; the other applicant had no college education, had worked in the hospital laundry for slightly over a year, and had spent only two months as a pharmacy volunteer. *Id.* at 1286, 1295-96. Furthermore, in *Lathram*, we accepted an inference of discrimination where the plaintiff, who possessed several years' experience in public affairs, was "substantially more qualified" than the unemployed former journalist who was hired for a higher position. 336 F.3d at 1092. Although Holcomb's qualifications are impressive — she has worked her way up to a Grade 11 position, earned "superior" and "outstanding" performance evaluations in recent years, and garnered positive comments from co-workers, including Mergele — the evidence fails to establish that Holcomb's qualifications were sufficiently superior to those of Del Valle to allow a jury to infer discrimination. *Cf. Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C.

Cir. 2003) (comparing rejected plaintiff's credentials with those of successful applicant, and finding plaintiff "simply not discernibly better" than applicant).

In her briefs and at oral argument, Holcomb placed great emphasis on three supposed "misstatements" by Mergele that, she argues, would permit a jury to infer Mergele's explanation is incorrect or fabricated and her hiring decision thus motivated by discrimination. But closer examination of the record reveals no actual evidence Mergele misstated Holcomb's qualifications as she understood them at the time of her hiring decision.

Holcomb first alleges Mergele misstated her familiarity with the EEO complaint process. She notes that Mergele's affidavit underscores Del Valle's "broader understanding of the administrative EEO complaint process," but she points out that in Holcomb's own 1998-99 performance evaluation, Mergele lauded Holcomb's penchant for "stay[ing] abreast of the latest changes in EEO complaint processing." This evidence does not establish Mergele misstated Holcomb's qualifications on this point. The complimentary comments Mergele wrote in Holcomb's 1998-99 evaluation neither contradict nor are inconsistent with her belief that Del Valle nevertheless possessed "broader understanding" of the EEO complaint process.

Second, Holcomb objects to Mergele's purported claim she did not hire Holcomb because of a lack of experience processing EEO complaints. Holcomb challenges this characterization of her experience by calling attention to two pieces of evidence to the contrary: an overtime slip authorizing work related to complaint processing, which Mergele signed; and testimony by Michael Moran that Holcomb processed complaints under his supervision.

Again, however, the record does not bear out Holcomb's claim Mergele misstated her qualifications. To begin with, Mergele never said she rejected Holcomb because she had never processed complaints; she said Holcomb acknowledged during the interview never actually processing any EEO complaints. In addition, the single overtime slip indicated Holcomb was to "assist w/processing complaints." "Assisting with" a task is not the same as having ultimate responsibility. Compare, for example, Holcomb's own Grade 11 Program Specialist job description to the disputed Grade 12 Program Specialist job description, which recognizes that the difference between the two activities amounts to at least one pay grade. *Compare* Grade 11 Program Specialist description, R.47, ROI No. 000005 Tab 25, at 2 (successful applicant "[a]ssists senior specialists in responding to Congressional inquiries"), *and id.* (successful applicant "[a]ssists in the development of key reports"), *with* Grade 12 Program Specialist description, R.47, ROI No. 000005 Tab 24, at 2 (successful applicant "[r]esponds to Congressional inquiries"), *and id.* (successful applicant "[d]evelops statistical reports"). Last, while Moran did testify that Holcomb processed some complaints under his supervision, Holcomb did not work for Moran until she had returned from her detail in March 2000 — after Mergele made her hiring decision in late 1999. Holcomb offers no evidence to show Mergele relied on Holcomb's lack of experience processing complaints to justify her decision not to promote; nor is there evidence Holcomb possessed the requisite experience when the decision was made.

The third "misstatement" Holcomb cites is her purported lack of experience writing accept/dismiss letters. To show otherwise, Holcomb points to her application package, in which she noted that she "composed letters accepting or dismissing allegations of discrimination," as well as to the affidavit of a co-worker, Constance Mullins, who stated Holcomb drafted and

reviewed acceptance/dismissal letters. But what Mergele actually said in her testimony was that Holcomb had not written such letters while Mergele was Holcomb's direct supervisor. Mergele also said that during Holcomb's interview, Holcomb said she had reviewed accept/dismiss letters written by others. The two pieces of evidence Holcomb advances do not give rise to the level of contradiction or "misstatement" that could be the basis for a reasonable jury to find unlawful animus.

None of Mergele's alleged "misstatements" approaches the level of "adequate evidence" we identified in *Aka*, where we posited a rather explicit misstatement as the type that might permit an inference of discrimination. *See Aka*, 156 F.3d at 1295 ("[I]f the employer says that it did not hire the plaintiff because he did not speak Portuguese, the plaintiff can show that he *did* speak Portuguese, and that the employer knew it."). In sum, Holcomb has failed to produce any evidence to rebut Mergele's explanation for hiring Del Valle that would permit a reasonable jury to infer discrimination.

2

A plaintiff in a Title VII case is not limited to challenging the employer's explanation; she can also avoid summary judgment by presenting other evidence, direct or circumstantial, that permits an inference of discrimination. *Id.* at 1295 n.11. Examples of such evidence include discriminatory statements by the employer, *id.* at 1289, or other attitudes suggesting the decisionmaker harbors discriminatory animus, *Carter*, 387 F.3d at 880; *Morgan*, 328 F.3d at 654, as well as data showing that the defendant employs members of the plaintiff's protected class at rates far below their numbers in the applicant pool and the general population, *Aka*, 156 F.3d at 1295 n.11. *See also*

15

*Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002).

Holcomb recites a litany of allegations purporting to show unlawful animus on the part of Mergele and FDIC. Some of these propositions are purely conclusory: for example, Holcomb submits as evidence of animus the mere allegation that Mergele "froze Holcomb out of her own position" in order to promote Del Valle. Others mischaracterize the record and are without evidentiary support. For example, Holcomb maintains that Mergele "refused" to help her return to ODEO from her DCA detail; however, the record shows Mergele would have welcomed Holcomb's return but lacked the authority to make this decision, and her supervisor vetoed the proposal out of a sense of obligation to DCA. Holcomb also argues that nearly all of the duties of the Grade 12 position duplicated Holcomb's Grade 11 position; but a comparison of all of the responsibilities of each job — not just those Holcomb points out — clearly explains the one-grade difference between the two positions.

In addition, Holcomb alleges four African-American employees have complained of race discrimination by Mergele. But the record reveals that with the exception of Holcomb, two employees, at most, have filed discrimination complaints against Mergele, both of which are in the informal stages.[2] We are not persuaded that the mere filing of two informal discrimination complaints against Mergele, where nothing more is known about the nature, merit, or outcome of those complaints, can be used as a proxy to establish Mergele's discriminatory animus in the present case. *Cf.* Fed. R. Evid. 404(b); *Carter v. District of Columbia*, 795 F.2d 116, 128-29, 131-32 (D.C. Cir. 1986);

---

[2] Another employee had filed an informal complaint but withdrew it soon thereafter.

*DiRico v. City of Quincy*, 404 F.3d 464, 467-68 (1st Cir. 2005); *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991).[3]

Holcomb also alleges a jury could infer discrimination because ODEO officials lowered her 1998-99 performance rating despite being unfamiliar with her work. The record indicates Mergele asked her supervisor, Gregory Cofer, to take responsibility for rating Holcomb because Cofer had worked with Holcomb for a longer period and could perform a fairer evaluation. There is no evidence suggesting that Cofer was "unfamiliar" with Holcomb's work. Moreover, there is no evidence Cofer played any role in Mergele's decision to hire Del Valle. In *Carter v. George Washington University*, we rejected a finding of discriminatory intent where the plaintiff alleged discriminatory intent by an official who "was not a decision-maker" with respect to the disputed hiring. 387 F.3d at 880. Therefore, even if Holcomb could show Cofer possessed discriminatory animus in lowering her rating, it would not suggest Mergele displayed the requisite discriminatory intent.

Similarly, there is no evidence to support Holcomb's contention a jury could infer discrimination because Mergele's arrival at ODEO coincided with the reassignment and retirement of a number of African-American employees, or because Mergele selected Del Valle, an FDIC employee from another

---

[3] Holcomb also claims that other employees have approached Vincent Johnson about behavior on Mergele's part they claim is discriminatory. Johnson did testify that three African-American employees approached him expressing unhappiness with Mergele's "method of supervising." He suggested these individuals voice their concerns to Mergele, which they did, and no complaints were ever filed. We are reluctant to infer invidious discrimination from what appears to be an amicable resolution of differences between supervisor and employee.

division, for the Grade 12 position at the same time ODEO was downsizing. The record indicates ODEO underwent a series of reorganizations that began when Vijay Deshpande became Acting Director. In fact, the first reorganization took place only three days after Mergele arrived at ODEO, and she testified that she was caught off-guard by the new structure. The record contains no evidence Mergele played a role in any of the decisions that led to the retirements and reassignments of many ODEO workers. Even were Holcomb to provide evidence that discriminatory animus motivated Deshpande's actions, which she does not, no reasonable jury could impute discriminatory intent on Mergele's part for Deshpande's actions. It is also worth noting that while Holcomb provides evidence of the races of various individuals who retired or were reassigned, she proffers no statistics or other data describing the demographic composition of ODEO or FDIC as a whole. Thus we are unable to determine whether the reorganizations adversely affected one race to the benefit of others or whether they affected employees of all races in proportion to their overall makeup within the corporation. *Cf. Aka*, 156 F.3d at 1295 n.11 ("[I]f a female plaintiff claims sex discrimination, evidence that the defendant employs women at rates far below their numbers in the applicant pool and the general population may well help her case.").

Several of Holcomb's many allegations do find some grounding in the record. For example, as Holcomb notes, Mergele testified she and Moran decided Holcomb would be assigned to his section following her return from DCA detail; yet only a few seconds later, she stated she and Moran had no role in this decision, which was "made as a part of the reorganization" by Deshpande. As Holcomb also points out, Moran testified Mergele told him she was writing a letter in support of an appeal of a desk audit for Del Valle; but Mergele did not mention that letter in describing the extent to which she assisted

Del Valle in the appeal. Even giving Holcomb the benefit of all reasonable inferences, as we must at the summary judgment stage, we conclude a reasonable jury could not infer discriminatory intent based on these few inconsistencies, which are both trivial and remote.

We need not address Holcomb's remaining contentions, except to note she marshals no evidence of the sort this court has previously considered probative of establishing discriminatory animus. In *Dunaway v. International Brotherhood of Teamsters*, 310 F.3d 758 (D.C. Cir. 2002), for instance, we addressed, in part, a plaintiff's contention that illegal discrimination prompted her termination. Reversing the district court's entry of summary judgment for the employer on the plaintiff's gender and national origin claims, we recognized evidence that her immediate supervisors had leveled crude, derogatory, and highly offensive remarks about her gender and ethnicity toward both the plaintiff and in general around the workplace, including statements directly connected to the employer's desire to terminate her employment. *Id.* at 764-66. Holcomb proffers no evidence along these lines or even close to it. To conclude that discriminatory animus motivated the remaining claims to which Holcomb alludes is to go far beyond reasonable inference and into the realm of unfettered speculation.

Examination of the record reveals that Holcomb, despite her numerous allegations, has not produced sufficient other evidence to satisfy her "burden of showing that a reasonable jury could conclude" she failed to receive the Grade 12 Program Specialist position on account of her race. *Waterhouse*, 298 F.3d at 997 (quoting *Aka*, 156 F.3d at 1290) (internal quotation marks omitted). In combination with her failure to produce evidence rebutting Mergele's legitimate, nondiscriminatory reason for selecting Del Valle, we conclude Holcomb has failed to satisfy

her burden at the summary judgment stage. We therefore affirm the district court's entry of summary judgment for FDIC on her discrimination claim.

B

Holcomb contends the drastic reduction in her work responsibilities when she returned from the DCA detail constitutes retaliation. Title VII prohibits federal agencies from retaliating against employees for asserting their rights. *Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001) (citing *Ethnic Employees of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1413 & n.13 (D.C. Cir. 1985)). Evaluation of Title VII retaliation claims follows the same burden-shifting template as discrimination claims. *Cones*, 199 F.3d at 520. First, a plaintiff must establish a prima facie case of retaliation; if she meets that burden, the employer must articulate a legitimate nonretaliatory reason for its action; finally, the plaintiff has the ultimate burden of establishing that the reason asserted by the employer is pretext for retaliation. *Id.*

To establish a prima facie case of retaliation, the plaintiff must present evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) the adverse action was causally related to the exercise of her rights. *Id.* at 521; *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 452-53 (D.C. Cir. 1999). By filing a formal complaint of discrimination on January 19, 2000, Holcomb engaged in protected activity.

The district court concluded Holcomb was not the subject of an adverse employment action. We disagree. Adverse employment actions are not confined to hirings, firings, promo-

tions, or other discrete incidents. *Cones*, 199 F.3d at 521. So long as a plaintiff meets the statutory requirement of being "aggrieved" by an employer's action, 42 U.S.C. § 2000e-16(c) (2000), we do not categorically reject a particular personnel action as nonadverse simply because it does not fall into a cognizable type, *Cones*, 199 F.3d at 521 (citing *Brown*, 199 F.3d at 455); *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 331 (D.C. Cir. 1992).[4] At the same time, our cases have established some limits to what constitutes an adverse employment action. Although "purely subjective injuries," such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions, the threshold is met when an employee "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1130-31 (citing *Brown*, 199 F.3d at 457); *see also Stewart*, 352 F.3d at 427. We have also expressly recognized that "reassignment with significantly different responsibilities . . . generally indicates an adverse action." *Forkkio*, 306 F.3d at 1131 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

After her return to ODEO, Holcomb never suffered a

---

[4] One reading of *Cones* suggests that a plaintiff makes out an adverse employment action once she has shown that she has been "aggrieved" by the action. As *Brown* makes clear, however, the purpose of meeting the "aggrieved" requirement is to ensure that a plaintiff has suffered the necessary injury for her to state a claim. 199 F.3d at 455. In other words, being "aggrieved" is necessary to state a claim for retaliation, but it is not sufficient to demonstrate that a particular employment action was adverse. Accordingly, we read *Cones* as standing simply for the proposition, previously espoused in *Passer* and reiterated here, that employment actions need not fall into cognizable categories to be considered adverse.

reduction in grade, pay, or benefits, nor does the evidence suggest her superiors ever considered these actions. She did, however, experience an extraordinary reduction in responsibilities that persisted for years, from which a reasonable jury could conclude Holcomb suffered "objectively tangible harm." The record includes uncontroverted testimony that her duties dramatically declined in both quantity and quality. Most tellingly, the February 2002 desk audit revealed Holcomb was performing tasks commensurate with a Grade 5 position — six grades below Holcomb's Grade 11 Program Specialist position.

FDIC concedes Holcomb was performing work well below her grade level but counters that the reduction was the inadvertent result of a reorganization, was merely "temporary," and was remedied when management ordered a desk audit and rewrote her position to give her duties commensurate with her classification. FDIC fails to acknowledge, though, that the desk audit did not take place until February 2002 — almost two years after Holcomb was assigned to Moran's section and found herself doing mostly clerical work. Additionally, it was not until August 2002 — six months later — that personnel finally approved her new job description. We conclude Holcomb suffered an adverse employment action based on the precipitous reduction in the complexity of her work and the substantial amount of time it took to correct these deficiencies — even after management became aware of the problem. Holcomb was assigned duties not only far below her grade level but below the level at which she had entered federal employment *ten years earlier*. Moreover, she was mired in this professional purgatory for over *two years*. These extraordinary circumstances rise to the level of materially adverse consequences that inflict objectively tangible harm. Accordingly, we find that Holcomb has suffered an adverse employment action.

We also conclude that the adverse employment action Holcomb experienced was causally related to her exercise of statutorily protected activity.  A plaintiff may satisfy this third element of a prima facie case by showing "the employer had knowledge of the employee's protected activity, and . . . the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *see also Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999).

Although, viewed in isolation, Holcomb's January 2000 complaint would not establish the "close temporal proximity" we have previously required to give rise to an inference of causation, *Cones*, 199 F.3d at 521; *see also Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003) (requiring a "close temporal relationship"), Holcomb engaged in other protected activity throughout her post-DCA tenure.  She traded correspondence with senior FDIC personnel in March 2000, sent numerous letters to EEOC between July 2000 and May 2001 (copying FDIC officials on many of them), filed a complaint against FDIC in the district court in July 2001, and filed a second administrative complaint in April 2002.  All of these actions occurred while Holcomb languished in her ODEO netherworld.  At the prima facie stage of a retaliation claim, a plaintiff's burden "is not great; [she] merely needs to establish facts adequate to permit an inference of retaliatory motive." *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984).  Because Holcomb repeatedly engaged in protected activity during the period when she also experienced reduced work assignments, we believe she has met this minimal burden and made out a prima facie case of retaliation.

In their briefs and at oral argument, both parties addressed only the prima facie aspect of Holcomb's retaliation claim. Neither before this court nor before the district court on the

motion for summary judgment did either party speak to the remaining elements of the *McDonnell Douglas* framework, including whether FDIC could offer a legitimate, nondiscriminatory reason for its presumptively retaliatory action or whether Holcomb could show that any such explanation was pretextual. Nor did the district court reach these issues in its decision. We are therefore discinclined to proceed further in our analysis of Holcomb's retaliation claim. "An appellate court normally does not give consideration to issues that were neither raised nor decided below." *Ryan v. Dep't of Justice*, 617 F.2d 781, 789 (D.C. Cir. 1980) (citing *Hormel v. Helvering*, 312 U.S. 552, 556-57 (1941)). This general rule is especially acute in the present context, for were we to divine a nondiscriminatory explanation on FDIC's part based on the evidence it has produced, Holcomb would be left in the lurch, having no way to rebut an explanation never before articulated to her. *See Doe v. DiGenova*, 779 F.2d 74, 89 (D.C. Cir. 1985) ("[C]ourts have properly been reluctant to address an issue where the opposing party has not had a fair and adequate opportunity to dispute the material issues."). The appropriate response is therefore to reverse the district court's grant of summary judgment, since Holcomb has established a prima facie case of retaliation, *cf. Russell v. Principi*, 257 F.3d 815, 819 (D.C. Cir. 2001), and, on remand, permit the parties to address these heretofore unconsidered matters before the district court.

## III

The district court properly granted summary judgment on Holcomb's discrimination claim, but it erred in granting summary judgment on her retaliation claim. Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.