Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 8, 2008        Decided November 21, 2008

No. 07-7165

CHARLES ROYALL,
APPELLANT

v.

NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01711)

———

*Thomas J. Gagliardo* argued the cause and filed the briefs for appellant.

*Peter Herman* argued the cause for appellee.  With him on the brief were *Oriana Vigliotti* and *Victoria L. Bor*.

Before: HENDERSON and ROGERS, *Circuit Judges* and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  This is an appeal from the grant of summary judgment in an employment discrimination case filed pursuant to 42 U.S.C. § 1981.  As a threshold matter, the National Association of Letter Carriers ("the Union") contends that the court lacks jurisdiction because the appeal is untimely.  Although the notice of appeal was not timely docketed in the district court, we hold that the appeal is timely because the notice of appeal was electronically filed within the thirty-day period for appeals in a civil case.  Under the federal rules of civil and appellate procedure, the district court electronic filing system's failure to docket the notice within that period is not attributable to Royall.  On the merits, we hold that the grant of summary judgment was appropriate because there was no evidence from which a reasonable jury could find that the Union's reason for terminating Charles Royall's employment was a pretext for unlawful discrimination.

**I.**

In February 2002, the Union hired Royall, an African American, as an accounting manager.  His responsibilities included handling payroll and the associated deductions and benefits, entering vendor bills into the accounting system, and ensuring that the Union paid its bills and taxes on time.  According to Union President William Young and the Secretary-Treasurer Jane Broendel, Royall indicated during his employment interview that "he was familiar" with the J.D. Edwards accounting program that the Union used, and that "he was a quick study, and he would be right up and running with it."  Young Dep. at 28; *see* Broendel Dep. at 13.

From the Union's perspective, Royall's performance did not meet expectations.  According to Young, Royall "never did

grasp [the] J.D. Edwards [system]," and, as a result, failed to make entries into the system that would have allowed the W-2 forms to be generated automatically. Young Dep. at 28. He based his opinion on what Broendel and finance director Ronald Stubblefield told him and on what he personally knew. Sukja Neidlinger, the payroll clerk, reported that it took Royall two months to learn basic payroll. Other Union employees also noted inadequacies in Royall's performance, including paying bills, taxes, and employees' benefits late. The Union incurred penalties because of the late tax payments during Royall's tenure. Several Union officers, including Young and Broendel, received complaints about these late payments from employees and vendors; they also received complaints about Royall's performance from other employees. Broendel was of the view that the only satisfactory elements of Royall's performance were that he arrived on time, did not leave early, and did not call in sick excessively.

Frank Sclafani, a temporary employee who later became the finance director, documented some of the inadequacies in Royall's performance in an undated memorandum to Broendel about the accounting department generally. While observing that there were "always two sides to every story," Sclafani advised that Royall's accounting abilities were "suspect" and that "unless actively supervised [Royall's work] is often incomplete or not timely, and in too many cases, inaccurate." Royall also did not demonstrate a willingness to take on or complete the tasks assigned to him, causing the finance director over time to rely on him less and less. In Sclafani's opinion, Royall's lack of ability would continue to have "a major detrimental effect on the work flow in the department." Sclafani also pointed out that while the J.D. Edwards system was "very versatile," its database was neither intuitive nor were the day-to-day accounting processes easy to learn, and the system required a "highly proficient user to harness [its] power and make the

database a useful accounting tool."

Disputing the evidence about his performance, Royall claimed that he had been complimented on his satisfactory performance on several occasions.  He  pointed out that his position had been vacant for six months and that he had caught up on the bonds, made deposits for taxes and payroll on time, eliminated insurance premium payments for people who had died, and completed Neidlinger's payroll while she was on vacation.  Stubblefield complimented him for getting current on the bonds, as had Broendel, who had never criticized him despite almost daily interaction, and Royall was unaware that Neidlinger had any "problems" with him.  In fact, prior to his termination, Royall had never been disciplined for the alleged inadequacies in his performance.  Further, Royall pointed out that various of the errors the Union officers had described took place several months before his termination.  Additionally, he claimed that he knew nothing about the J.D. Edwards system before he started working for the Union.  Critically, however, Royall did not deny that on two occasions he had paid the Union's taxes late and paid employee benefit claims late.  He also acknowledged that there were other complaints about his work but attributed some of the problems to matters that were his supervisor's responsibility.

Upon discussing Royall's performance with Stubblefield and Broendel, Young fired Royall six months after he was hired. According to Young, "the only reason Royall's employment was terminated is he was not able to do all of the functions of the position that he was hired to do, and we couldn't get the finance department in order without someone who was able to do the things that he was supposed to do."  Young Dep. at 50.

Royall filed suit against the Union on the ground that he was terminated because of his race in violation of § 1981.  He

alleged that he had performed his duties in an acceptable manner, that claims he was not doing his job were false, and that he was replaced by a white male who was allowed to return to his former position after a few months of inadequate performance. He alleged as well that the Union terminated the employment of another African American male, Stubblefield, after Royall's discharge because he "ostensibly 'didn't fit in.'" Compl. ¶ 12. The Union answered and then moved for summary judgment, which Royall opposed. The district court granted the Union's motion and Royall appeals.

## II.

The Federal Rules of Appellate Procedure require a notice of appeal in a civil case to be filed within thirty days of entry of the judgment or order being appealed. FED. R. APP. P. 4(a)(1). This time period is jurisdictional and mandatory. *Bowles v. Russell*, 127 S. Ct. 2360, 2363-64 (2007); *see* 28 U.S.C. § 2107. A notice's improper form does not require dismissal of the appeal. Under Rule 83(a)(2) of the Federal Rules of Civil Procedure, "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Likewise, Rule 5(d)(4) provides that "[t]he clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice." FED. R. CIV. P. 5(d)(4). Relatedly, Federal Rule of Appellate Procedure 3(c)(4) bars dismissal of an appeal because of the notice of appeal's "informality of form or title."

The local rules of the United States District Court for the District of Columbia require all documents to be submitted electronically. D.D.C. R. 5.4(a). The clerk of the district court, however, has issued general information stating that a notice of appeal "cannot be filed by an attorney using the CM/ECF

system."[1]  More recently, the clerk has issued instructions for online filing of notices of appeal.[2]  The Union does not suggest that Royall's appeal is untimely because of noncompliance with the requirement of the local rule to submit a paper copy of the notice of appeal when filing it electronically and we have no occasion to address this issue.

The relevant events are undisputed except insofar as the Union challenges Royall's claim that his appeal was successfully filed.

> On September 26, 2007, Royall, by and through counsel, filed a notice of appeal using the District Court's electronic case filing system . . . and opposing counsel were served with copies by mail.  As part of the ECF process a credit card number and related information [were] submitted so that the required fees could be paid.  That same day Royall's counsel received electronic confirmation from the Court that

---

[1]  United States District Court for the District of Columbia, Clerk's Office General Information & Civil Filing Procedures 11 (Apr. 9, 2006), *available at* www.dcd.uscourts.gov/LocalRulesSupplement.pdf; United States District Court for the District of Columbia, Civil ECF Filing Pointers 3, *available at* http://www.dcd.uscourts.gov/civil-newfilingptrs.pdf (same); *see also* United States District Court for the District of Columbia, Checklist for Attorneys Using the Electronic Filing System 1, *available at* http://www.dcd.uscourts.gov/attycheckofflist.pdf.

[2]  United States District Court for the District of Columbia, How to File a Notice of Appeal and Pay the Filing Fee Online, *available at* http://www.dcd.uscourts.gov/NoticeAppeal-PayFeeOnline.pdf.  The clerk's online guidance documents, *supra* note 1, have yet to be updated.

the fee had been charged to his credit card.

Sometime in October 2007 Royall's counsel called the clerk of this Court to inquire about filing a docketing statement and when he might receive a scheduling order. The clerk informed him that the record had not yet been transmitted; and that when it was he would be notified.

On November 21, 2007, Royall's counsel again contacted the clerk of this Court and when informed that the record had still not been transmitted, he contacted the District Court. It was during that telephone conversation that counsel was informed that the District Court had not docketed the notice of appeal which had been filed almost two months earlier. He immediately sent a letter to the clerk by facsimile transmission, attaching thereto a copy of the notice of appeal and his credit card statement showing that he had been charged $455 by "USDC DC WASHINGTON DC" on September 26, 2007. He also related that he had spoken with the ECF coordinator on that day, had been told the system was experiencing a glitch and later told the system was working properly. He suggested this might account for the lack of docket entry.

On or about that same day, the District Court clerk docketed the notice as of September 26, 2007; and the record was subsequently transmitted to this Court.

Appellant's Br. 10 (internal citations omitted).

The filing date on the docket sheet, "09/26/2007," supports Royall's contention that the notice of appeal was timely filed, as

does the credit card invoice indicating a September 26, 2007 charge from the district court of $455, the fee for filing a notice of appeal. A September 26, 2007 filing would be timely because the thirty-day period began on August 29, 2007, when the district court granted summary judgment to the Union.

Without seriously disputing the electronic submission and receipt date, the Union maintains that the notice was not "filed" in satisfaction of Rule 4(b) because the clerk (or the clerk's computer system) failed to register the filing on the docket sheet until November 21, 2007 – nearly two months after the deadline. This argument fails because the date of receipt controls in this case. The Supreme Court has long recognized that, with exceptions not relevant here, receipt by the clerk within the required time period satisfies the timely filing requirement for a notice of appeal in a civil case, *see Houston v. Lack*, 487 U.S. 266, 273-74 (1988); *Parissi v. Telechron, Inc.*, 349 U.S. 46, 46 (1955) (mem.). This court has similarly held, although not in the context of jurisdictional civil notices of appeal, that receipt by a judge constitutes filing under a rule requiring filing with the clerk of the court or the judge. *United States v. Brown*, 921 F.2d 1304, 1309 (D.C. Cir. 1990). Still, relying on *Bowles* and other related cases the Union maintains that because the period for filing a notice of appeal is jurisdictional, the clerk was not permitted to "backdate" Royall's notice to September 26. The Union's challenge to the timeliness of the appeal fails for three reasons.

First, because Royall tendered his notice of appeal to the clerk within the thirty-day filing period, *Bowles* does not require dismissal of the appeal. In *Bowles*, the district court reopened the time to file an appeal but told Bowles that he had seventeen days to file rather than the fourteen days provided in the Rule. *Bowles*, 127 S. Ct. at 2362. Bowles filed the notice of appeal after the mandatory and jurisdictional fourteen-day period

expired, and the Court held that his notice was filed untimely and therefore the appeal was barred even though he had filed within seventeen days. *Id.* at 2362-66. Thus, *Bowles* does not control the question here: whether electronic submission of a notice of appeal within the thirty-day period satisfies the timely filing requirement even though the notice of appeal is not docketed until after that period has expired. However, as *Bowles* held that courts may not create equitable exceptions to jurisdictional requirements, *id.* at 2366, Royall's suggestion that "equitable tolling prohibits dismissal" of the appeal necessarily fails.

Second, the Union is correct that backdating a late notice does not render it timely, but that is not what happened here. The clerk simply deemed the notice filed on the date of Royall's electronic submission. Although a litigant is not "entitled to rely on a court's mere acceptance and processing of an untimely notice of appeal," *Moore v. South Carolina Labor Bd.*, 100 F.3d 162, 164 (D.C. Cir. 1996), the clerk is required to accept and treat as timely a notice that was timely received even if it was received in an improper form. FED. R. CIV. P. 5(d)(4).

Third, under the district court's local rules, electronic filing "constitutes filing for all purposes under the Federal Rules of Civil Procedure and the Local Rules of [the district court]," D.D.C. R. 5.4(c), and the electronic case filing system is thus a substitute for the clerk of the court. As the Seventh Circuit observed, noting Rule 5(e)'s requirement, now located in Rule 5(d)(4), that clerks accept documents tendered for filing, "[t]he software that operates an e-filing system acts for 'the clerk' as far as Rule 5 is concerned; a step forbidden by a person standing at a counter is equally forbidden to an automated agent that acts on the court's behalf." *Farzana K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 707 (7th Cir. 2007). In a case where the filing software rejected a complaint that was transmitted electronically

but marked with the wrong docket number, that court observed:

> [T]he fact remains that the complaint was tendered to the clerk's office on the 30th day, and the computer's reaction does more to show the limits of some programmer's imagination than to render the suit untimely. Had a paper copy of the complaint been handed over the counter on July 6, a deputy clerk would have crossed out the old docket number, stamped a new one, and filed the document; there is no reason to throw this suit out of court just because the e-filing system did not know how to take an equivalent step.

*Id.* Likewise, as the Second Circuit has recognized, *Contino v. United States*, 535 F.3d 553, 556 (2d Cir. 2008), even in the context of mandatory and jurisdictional civil notices of appeal, electronic submission of a notice of appeal during the filing period constitutes timely filing even if the electronic case filing system rejects the submission. The Ninth Circuit also held recently that an appeal was timely because the clerk received a hard copy of the notice of appeal within the filing period, even though local rules required electronic filing. *Klemm v. Astrue*, No. 06-16981, 2008 WL 4210589, at *2-3 (9th Cir. Sep. 16, 2006).[3]

---

[3] In unpublished opinions, two circuits have held that attempted electronic filings were ineffective because of noncompliance with local procedures. In *Le Williamson v. Deluxe Fin. Servs., Inc.*, 216 F. App'x 728 (10th Cir. 2007), the notice of appeal was sent by electronic mail within the thirty-day filing period but was directed to the wrong address and local rules required pro se litigants to make paper filings. *Id.* at 729. In *Stark v. Right Mgmt. Consultants*, 247 F. App'x 855 (8th Cir. 2007), a complaint was submitted at 11:27 p.m. on the final day of the applicable filing period

Accordingly, we hold that, pursuant to the federal rules, the electronic case filing system's failure to docket Royall's timely submitted notice of appeal cannot be treated as a failure on his part to file timely.  His situation is akin to one in which the clerk's office misplaces a filing and then later makes the docket entry when the filing is found.  Where, as here, a notice of appeal is tendered to the clerk within the filing period, "any error regarding the filing of his notice of appeal must be charged to the court, not to him."  *Baney v. Dep't of Justice*, 263 F. App'x 892, 894 (Fed. Cir. 2008) (unpublished); *see also Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs.*, 422 F.3d 72, 76 (2d Cir. 2005).  Because Royall's notice of appeal was timely filed, the court has jurisdiction and we turn to the merits of his appeal.

## III.

Summary judgment is appropriate when there is no genuine issue of material fact and the "the moving party is entitled to judgment as a matter of law."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting FED. R. CIV. P. 56(c)) (internal quotation marks omitted).  A court must "view the evidence in the light most favorable" to the nonmoving party and "draw all reasonable inferences in [his] favor."  *Id.*  A court may not make credibility determinations.  *Id.*  Our review of the grant of summary judgment is *de novo.  Id*.

The burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to § 1981

---

but local rules required new cases that were filed electronically to be submitted by 5:00 p.m.  *Id.* at 856.  The Tenth Circuit did not address Federal Rule of Civil Procedure 83(a)(2) and the Eighth Circuit deemed the local timing requirement not to be a matter of "form" under Rule 83(a)(2), *id.*, an issue not presented in the instant case.

employment discrimination claims where, as here, there is no direct evidence that prohibited discrimination caused the adverse employment action. *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The plaintiff must first establish a prima facie case of racial discrimination, *Chappell-Johnson v. Powell,* 440 F.3d 484, 487 (D.C. Cir. 2006), by showing that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination," *id.* at 488. The burden of production then shifts to the employer to articulate a "legitimate, nondiscriminatory" justification for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Where an employer offers "clear and reasonably specific" nondiscriminatory reasons for the adverse employment action, *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981), the court need not decide whether the plaintiff has made out a prima facie case, and "proceed[s] to 'the ultimate question of discrimination *vel non*.'" *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005); *see also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

Once the employer offers this justification, the burden of production shifts back to the plaintiff, "the *McDonnell Douglas* framework falls away, and we must determine whether a reasonable jury 'could infer discrimination'" based on the prima facie case, the plaintiff's challenge to the employer's proffered justification, and any other evidence of discrimination. *Vickers v. Powell*, 493 F.3d 186, 195 (D.C. Cir. 2007) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)). A plaintiff, who retains the burden of persuasion throughout, *Burdine*, 450 U.S. at 253, may show pretext in a number of ways, including by offering evidence of more favorable treatment of similarly situated persons who are not members of the protected class or that the employer is lying about the proffered justification. *See Brady v. Office of the*

*Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008). Under the latter approach, "[i]f the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Id.; see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Here, the Union has articulated a legitimate nondiscriminatory justification for terminating Royall's employment, namely "a steady drumbeat of complaints about Royall's job performance." Appellee's Br. 19. Among other evidence, the testimony about Royall paying payroll taxes late, improperly entering W-2 information into the accounting software system, making the Union officers' benefit payments late, and experiencing difficulties learning the accounting system substantiate the inadequate performance justification. The Union presented documentary evidence of the late tax payments and consequent penalties. Although the Union failed to produce documentary evidence to substantiate its other reasons for terminating Royall, explaining that some of the documents had been misplaced, the Union officers' sworn depositions and the documentary evidence regarding the late tax payments suffice to meet the Union's burden "to produce admissible evidence that, if believed, would establish that [its] action was motivated by a legitimate, nondiscriminatory reason." *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1151 (D.C. Cir. 2004). The testimonial evidence is admissible, and Royall's contention that sworn deposition statements recounting complaints is hearsay fails because the Union officers' statements were offered "to illuminate their motives and actions as supervisors," not to show that the complaints were valid, *McKenna v. Weinberger*, 729 F.2d 783, 792 (D.C. Cir. 1984); *see* FED. R. EVID. 801(c). Therefore, the court need not decide whether Royall made a prima facie case before

assessing the question of discrimination *vel non*. *See Aikens*, 460 U.S. at 714. However, the evidence Royall presented in making his prima facie case remains relevant for determining whether the proffered reason was the true reason or mere pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).

One way to discredit an employer's justification is to show that similarly situated employees of a different race received more favorable treatment. *See Brady*, 520 F.3d at 495. To that end, Royall contends that he was treated more harshly than his underperforming white replacement. The Union allowed Royall's replacement to transfer to another Union position after his performance did not meet expectations, but fired Royall. Although the two men may have been similarly situated to the extent that they held the same position, Royall has not shown that "all of the relevant aspects of [his] employment were 'nearly identical' to those of" his replacement, *see Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). Royall's employment was terminated after six months while his replacement volunteered to transfer back to his prior position with the Union after two months when he was unable to meet job requirements. Royall was a new, at-will hire; his replacement was previously employed by the Union. There is no evidence to show that the Union would not have granted a transfer request by Royall or would not have fired Royall's replacement after six months had he not earlier voluntarily transferred. Therefore, that the Union fired Royall but granted his replacement's transfer request does not demonstrate unlawful discrimination.

Also relevant to the discrimination *vel non* inquiry is Royall's contention that the Union's proffered reasons for terminating his employment are unpersuasive. *See Brady*, 520

F.3d at 495. Royall casts doubt upon several of the examples the Union employees gave in justifying their belief that he was not performing his job adequately. For instance, the Union maintains that Royall failed to make certain required cost-of-living adjustments, but Royall responds that these adjustments were his supervisor's responsibility, not his. Likewise, although the Union blames Royall for leaving payroll checks unsecured, Royall responds that his supervisor was responsible for securing the checks and his possession of any checks would have conflicted with Generally Accepted Accounting Principles. Royall also challenges the payroll clerk's statement that it took Royall two months to learn basic payroll by pointing to the clerk's sworn deposition statement that she had not worked with him every day over those two months. As to the documented late tax payments, Royall asserts that these incidents took place several months before his termination, indicating that they were not the true reason for his discharge. These challenges weaken but do not fully undermine the Union's proffered justification for terminating Royall's employment.

Royall does not dispute some of the Union's stated reasons for his termination that alone could have been sufficient nondiscriminatory grounds for terminating an at-will employee. For example, although Royall maintains that he was not responsible for all of the Union's late tax payments and penalties, he does not challenge the Union's documented showing that there were two late payroll tax payments during his tenure, resulting in penalties. Royall also does not deny that Young received two or three complaints that the Union had not paid officers' benefits, but simply responds that there is no evidence of these complaints other than Young's deposition statement and that Young's statements are inadmissible hearsay. However, Young's testimony about the complaints is admissible to show his reasons, not their truth. There are several other allegations that Royall does not deny, but rather criticizes

for being unsupported by documentary evidence. For instance, Royall does not respond to items 35 and 36 in the Union's statement of undisputed material facts that employees complained about payroll responsibilities that had been carried out untimely. In light of this evidence, the Union's stated belief about Royall's performance deficiencies was reasonable.

On appeal Royall does not contend that his deposition testimony about several incidents of racial discrimination was evidence of unlawful discrimination. Neither does he contend that the district court erred in ruling that he had conceded the issue insofar as he did not refer to this evidence in opposing the Union's motion for summary judgment, *see* D.D.C. R. 7(b). Any arguments based on this testimony are therefore forfeited. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).

Given the consistent testimony by several Union officers that they received complaints about Royall's work and the undisputed evidence that at least two tax payments for which he was responsible were late, a reasonable jury could not find that the Union's officers were lying, much less that the Union's "stated belief about the underlying facts is [un]reasonable in light of the evidence." *Brady*, 520 F.3d at 495; *see also George*, 407 F.3d at 415. Other than evidence that he and his African American supervisor were replaced by white employees, Royall provides no evidence of unlawful discrimination that the court may properly consider. It is thus unnecessary to consider the Union's further suggestion that the fact that Young participated in both the decision to hire and to terminate Royall's employment is further evidence that its termination decision was not discriminatory. Accordingly, we affirm the grant of summary judgment.