# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 19, 2015          Decided February 12, 2016

No. 14-7108

PATRICIA WHEELER,
APPELLANT

v.

GEORGETOWN UNIVERSITY HOSPITAL, ALSO KNOWN AS
MEDSTAR - GEORGETOWN MEDICAL CENTER,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01441)

*Donna Williams Rucker* argued the cause and filed the brief for Appellant.

*Ziad Haddad* argued the cause for Appellee.  On the brief was *David C. Tobin*.

Before: HENDERSON, PILLARD and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Appellant Patricia Wheeler, who is African-American, charges that she was improperly terminated by her former

employer Georgetown University Hospital (the Hospital), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Nurse Wheeler claims that her termination was the result of racial discrimination. For the reasons set forth below, we reverse the District Court's grant of summary judgment to the Hospital and remand for further proceedings.

**I.**

Patricia Wheeler was hired as a Clinical Nurse at the Hospital in March 2006, in a department of the Hospital known as "4 East." In March 2007, Nurse Angela Hollandsworth assumed the position of Clinical Manager for 4 East, and became Nurse Wheeler's immediate supervisor. As the Clinical Manager of 4 East, Nurse Hollandsworth had responsibilities for the hiring, supervision, and, when necessary, termination, of all of the Registered Nurses in her unit. The Clinical Director of the unit was Sue Howell.

On December 27, 2009, Nurse Wheeler was floated to the Hospital's Intensive Care Unit (ICU). She was assigned to care for three patients during a twelve-hour shift that began at 7:00 a.m. The following day, four nurses who had been working with Nurse Wheeler during that December 27 shift reported to Nurse Hollandsworth that Nurse Wheeler had made a number of mistakes, including (1) a report that Nurse Wheeler had left a patient's IV bag empty, that the IV was set up to deliver the wrong medications, and that the patient had not been given two prescribed doses of insulin; (2) a report that Nurse Wheeler had failed to properly record patient vital signs for at least two of her patients, had failed to provide a temperature probe monitor to a patient, and had failed to properly set a blood pressure cuff on a patient; (3) a report that one of Nurse Wheeler's patients, who was unable to make intentional movements or reposition herself without

assistance, was left slouched over in bed with her head rested uncomfortably against the side rail, resulting in the patient being soaked through to her gown and sheets in her own oral secretions, that Nurse Wheeler did not check in on the patient during the five hours the patient's family was in the room, and that later the patient was once again found slumped against the rail and also caked in dry stool; and (4) a report that another of Nurse Wheeler's patients had been discovered lying in dried stool, also with an empty antibiotic bag hooked up to the running heparin drip.

On December 30, 2009, following the reporting of these alleged incidents, Nurse Hollandsworth and Director Howell spoke with Nurse Wheeler via speaker phone to notify her that she was being suspended and to advise her that she was to report to the Hospital later that day in order to review the issues under investigation. During Nurse Wheeler's suspension, Nurse Hollandsworth conducted an investigation into the allegations. Nurse Hollandsworth interviewed each of the nurses who had reported on Nurse Wheeler's conduct, and confirmed in writing what each had told her they observed. Nurse Hollandsworth also requested that Nurse Wheeler provide a written explanation of the incidents, which Wheeler provided in two emails to Michelle Lawyer in the Hospital's Human Resources department on January 1 and 6, 2010. Ms. Lawyer forwarded Nurse Wheeler's emails to Nurse Hollandsworth and Director Howell on January 4 and 7, 2010, respectively.

On January 8, 2010, Nurse Wheeler met with Nurse Hollandsworth and Director Howell, and was notified at that time that the decision had been made to terminate her employment. According to the termination letter, Nurse Wheeler's termination was based on the findings of the investigation into the allegations of poor work performance

during her December 27, 2009 shift, which concluded that her actions on that day "reflected a serious lack of clinical judgment and jeopardized the health and safety of [the Hospital's] patients." J.A. 109. The Hospital did not hire a nurse to replace Wheeler.

Nurse Wheeler filed a complaint with the Equal Employment Opportunity Commission (EEOC) on January 7, 2010. She then filed a formal Charge of Discrimination with the EEOC and the District of Columbia Office of Human Rights (OHR) on January 21, 2010. On or about September 22, 2010, the EEOC issued Nurse Wheeler a Notice of Right to Sue.

Nurse Wheeler filed a complaint with the District of Columbia Superior Court on July 26, 2010. The action was removed to the District Court for the District of Columbia on August 25, 2010. The complaint alleged, *inter alia*, that the Hospital discriminated against Nurse Wheeler based on her race in violation of Title VII of the 1964 Civil Rights Act. The Hospital filed a motion to dismiss on August 31, 2010, seeking dismissal of all counts. The District Court granted the motion in part on June 6, 2011. *See Wheeler v. Georgetown Univ. Hosp.* (*Wheeler I*), 788 F. Supp. 2d 1 (D.D.C. 2011). The Hospital moved for summary judgment on January 31, 2014. The District Court granted the Hospital's motion for summary judgment on June 27, 2014. *Wheeler v. Georgetown Univ. Hosp.* (*Wheeler II*), 52 F. Supp. 3d 40 (D.D.C. 2014).

## II.

We review the District Court's grant of summary judgment *de novo*. *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the

non-movant and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in her favor. *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). The evidence presented must show that (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. *Holcomb*, 433 F.3d at 895; FED. R. CIV. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

In conducting our analysis, we review the record taken as a whole. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotation marks omitted). We are not to make credibility determinations or weigh the evidence. *Holcomb*, 433 F.3d at 895; *see Liberty Lobby*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

Title VII of the Civil Rights Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-

2(a)(1). Where the plaintiff lacks direct evidence of discrimination, racial discrimination claims under Title VII are subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006). First, the plaintiff carries the burden of establishing a prima facie case of racial discrimination. *Id.* "To state a prima facie case of discrimination, a plaintiff must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). Once the prima facie case is established, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* at 1092. If the employer does this, the burden then shifts back to the plaintiff, who must be afforded a fair opportunity to show that the employer's stated reason for its actions was in fact pretext for unlawful discrimination. *Id.*

In reviewing a summary judgment motion where the defendant has proffered some legitimate reason for its adverse employment action, however, we skip ahead to the third step in the test. "[O]nce the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quotation marks and alteration omitted). "[T]he district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Id.* at 494 (emphasis in original); *see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) ("[A]sking whether [the plaintiff] satisfied his prima facie burden is an unnecessary and improper 'sideshow.'" (quoting *Brady*, 520

F.3d at 494)). The only question that remains is whether the evidence creates a material dispute on the ultimate issue. *Jones*, 557 F.3d at 678. As we have stated:

> [I]f an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action, the district court must conduct one central inquiry in considering an employer's motion for summary judgment or judgment as a matter of law: whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis.

*Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). Thus, the only relevant inquiry here is whether Nurse Wheeler produced sufficient evidence for a reasonable jury to conclude that the Hospital's asserted non-discriminatory reason for firing her was not the actual reason, and that instead the Hospital was intentionally discriminating against Nurse Wheeler on account of her race.

In considering this question, we ask "whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc). This Court does not sit as a "super-personnel department" that reexamines an employer's business decisions, *Barbour v.*

*Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999), and "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive," *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quotation marks omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

## III.

Nurse Wheeler argues, contrary to the District Court's determination, that there were sufficient facts and evidence presented from which a reasonable juror could have concluded that the reasons proffered by the Hospital for her termination were pretextual, and that the termination was actually the result of racial discrimination. A plaintiff may support an inference that her employer's stated reasons for undertaking the adverse employment action in question were pretextual by citing a number of possible sources of evidence, including "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, [] the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker*, 798 F.3d at 1092; *see also Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008) ("A plaintiff, who retains the burden of persuasion throughout, may show pretext in a number of ways, including by offering evidence of more favorable treatment of similarly situated persons who are not members of the protected class or that the employer is lying about the proffered justification." (citation

omitted)).  By providing evidence that similarly situated non-black nurses were treated more favorably, Nurse Wheeler has raised a genuine issue of material fact regarding her termination, which ought to be resolved by a jury.

**A.**

Nurse Wheeler seeks to discredit the Hospital's justification for her termination by showing that nurses of other races – primarily white nurses – were not disciplined as severely for similar conduct.  "One way to discredit an employer's justification is to show that similarly situated employees of a different race received more favorable treatment."  *Royall*, 548 F.3d at 145; *see also* 1 LEX K. LARSON, EMPLOYMENT DISCRIMINATION § 8.04, at 8-66 (2d ed. 2007) ("Probably the most commonly employed method of demonstrating that an employer's explanation is pretextual is to show that similarly situated persons of a different race or sex received more favorable treatment.").  Showing that others outside the plaintiff's class have been more favorably treated is "[e]specially relevant" to a demonstration of pretext. *McDonnell Douglas*, 411 U.S. at 804.  The question of whether employees are similarly situated in order to show pretext "ordinarily presents a question of fact for the jury." *George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005).

Nurse Wheeler identifies six nurses whom she believes were similarly situated but treated more favorably: W.L., K.M., C.S., A.A., B.D., and C.R.  Nurse Wheeler has asserted that during the time she was under the supervision of Nurse Hollandsworth and Director Howell, these similarly-situated nurses were not similarly terminated for their "gross misconduct," which Wheeler contends included calculating and administering the wrong dosage of heparin (W.L., B.D., and C.R.), failing to document a patient's changed mental

status and delaying the provision of treatment (K.M.), withholding prescribed medication in contradiction to the doctor's orders (C.S.), and failing to provide a patient with a needed bite block (A.A.). None of these nurses was terminated.

For a plaintiff to prove that she is similarly situated to another employee, she must demonstrate that she and the alleged similarly-situated employee "were charged with offenses of comparable seriousness," and "that all of the relevant aspects of [her] employment situation were nearly identical to those of the other employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quotation marks and alteration omitted) (citing *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)). "Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Id.* Viewing the evidence in the light most favorable to Nurse Wheeler, *Carter*, 387 F.3d at 878, and recognizing that determining whether two employees are similarly situated is ordinarily a question of fact for the jury, *George*, 407 F.3d at 414, we believe there is sufficient evidence from which a jury could reasonably conclude, bearing in mind the *Burley* factors, that one or more of the proposed comparator nurses were similarly situated to Wheeler in all relevant respects.

**1.**

First, all of the nurses identified by Nurse Wheeler were Registered Nurses working in the same or a comparable unit. Nurse Wheeler described these nurses as her colleagues, and the Hospital has not countered with any evidence to indicate

that, actually, the nurses should be differentiated in terms of their roles and responsibilities – either because they were above or below Nurse Wheeler's pay grade or for any other reason. *Cf. Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (male law associate was not similarly situated to female associate in sex discrimination case based in part on the fact that it was undisputed that the male associate was lower in seniority). With these facts, a jury could reasonably conclude that the other nurses were in similar roles and had similar responsibilities.

**2.**

Second, all of the proposed comparator nurses were subject to the same decision makers as Nurse Wheeler: the named nurses were either subject to discipline by both Nurse Hollandsworth and Director Howell, or they were supervised by a different clinical manager who also reported to Director Howell. And all were subject to the decisional authority of the GUH Human Resources department.

It is undisputed that Nurse Hollandsworth played a key role in the decision to terminate Wheeler, but she was not the lone decision maker. In responding to Nurse Wheeler's interrogatory request to "[i]dentify the person who made the decision to terminate" her employment, the Hospital stated that "[t]he determination to terminate [Nurse Wheeler's] employment was recommended by her Clinical Manager, Angela Hollandsworth, and supported by Sue Howell and GUH Human Resources." J.A. 382. The Hospital also asserted in its interrogatory responses that "*GUH Human Resources* determined that Plaintiff should be terminated" based on Hollandsworth's investigation. J.A. 381 (emphasis added). And despite the Hospital's assertion that "Plaintiff was not fired by Susan Howell," J.A. 383, other evidence

indicates that Director Howell was integrally involved in Nurse Wheeler's disciplinary process and was therefore a relevant decision maker. Where the Hospital clearly identified Director Howell and GUH Human Resources – in addition to Nurse Hollandsworth – as "person[s] who made the decision to terminate" Nurse Wheeler, J.A. 382, a reasonable juror could conclude that disciplinary decision-making was a shared responsibility between Nurse Hollandsworth, the direct supervisor, Howell, the clinical director, and GUH Human Resources. Accordingly, there is at least a dispute of fact as to whether other nurses also subject to supervision and discipline by Hollandsworth, Howell, as clinical director, or GUH Human Resources should be viewed as similarly situated to Wheeler in this respect.

Based on the record evidence, a juror could reasonably conclude that either Nurse Hollandsworth or Director Howell, or both, played a role in the decision not to terminate three out of the four of Nurse Wheeler's proposed comparators who were also supervised by Nurse Hollandsworth – C.S., K.M., and W.L. – and that the harsher treatment of Wheeler was based on race.[1] Nurse Hollandsworth was well aware, for

---

[1] With respect to A.A., however, we find this factor eliminates her as a comparator because the record evidence does not support a finding that her alleged misconduct was relayed to Nurse Hollandsworth, Director Howell, or Human Resources. While A.A. worked directly for Nurse Hollandsworth, the evidence provided by Nurse Wheeler suggests only that an "ICU manager" was informed of the incident. J.A. 254. Nurse Wheeler admitted that she "didn't talk to anyone about going to HR" to report the incident, J.A. 256, and Nurse Hollandsworth denied any knowledge of the event in her deposition, J.A. 343-44. For this reason, there is insufficient evidence for a juror to reasonably conclude that Hollandsworth,

example, that C.S. erroneously discontinued sickle cell anemia medication contrary to the doctor's order that it be administered, but after reviewing the incident report, Nurse Hollandsworth chose merely to counsel C.S. rather than terminate her or recommend her termination. And although Nurse Hollandsworth denied awareness of K.M.'s misconduct in failing to attend to a patient who "coded," Wheeler's own testimony that, when it happened, she told Nurse Hollandsworth about that incident suffices to create a material factual dispute that Nurse Hollandsworth had a role in the no-discipline response to K.M.'s misconduct. Another of Nurse Hollandsworth's direct reports, W.L., similarly received no discipline after she gave a patient an incorrect dose of the anti-coagulant heparin, requiring the patient's intubation and transfer to the ICU. And though Nurse Hollandsworth was not involved in the investigation into W.L.'s misconduct, the record evidence suggests that Director Howell or some other common manager was.

The record also shows that two other proposed comparators, B.D. and C.R., shared a decision maker in common with Nurse Wheeler in Director Howell, though they worked in a different unit and under a different clinical manager. As discussed above, Sue Howell was the director of the unit in which Nurse Wheeler worked, and in conjunction with Michelle Lawyer of GUH Human Resources was integrally involved in the decision to terminate Wheeler. According to the record evidence, Director Howell and Nurse Hollandsworth jointly called Nurse Wheeler on December 29 to inform her of her suspension; Howell and Hollandsworth both received Nurse Wheeler's emails to Ms. Lawyer providing Nurse Wheeler's statements as to the incidents

Howell, or Human Resources were involved in the decision to discipline A.A., and thus A.A. is not an apt comparator.

under investigation; and Howell and Hollandsworth both met with Nurse Wheeler in person on January 8 to notify her of the decision to terminate her employment. Given Director Howell's close involvement in Nurse Wheeler's case, a jury could reasonably infer that Howell, as director of the clinical unit where B.D. and C.R. worked, similarly participated in the decision to suspend B.D. and C.R., along with their direct supervisor. The evidence thus suffices to create a triable issue whether Director Howell engaged in racially disparate treatment of Nurse Wheeler by suspending, rather than terminating, similarly situated white nurses.

In sum, there remains a genuine issue of material dispute, based on the facts presented, and viewing the evidence in the light most favorable to Nurse Wheeler, that other nurses were subject to the same decision makers to a sufficient extent to allow a meaningful comparison as to how these nurses were ultimately treated by the Hospital. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 563-64 (6th Cir. 2013) (noting that the "same supervisor" criterion had never been read as an inflexible requirement, but "[r]ather, a court should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee" (internal quotation marks omitted)).

**3.**

Finally, Nurse Wheeler has raised a genuine issue as to whether the alleged misdeeds of the proposed comparators were of comparable seriousness to her own alleged misconduct. In order to be considered similarly situated, it is not necessary that the comparators engaged in the exact same offense; what is required is merely that the offenses are of "comparable seriousness." *McDonnell Douglass*, 411 U.S. at 804; *see also Holbrook*, 196 F.3d at 261 (proof that another

employee is similarly situated requires demonstration that the two employees "were charged with offenses of 'comparable seriousness'" (quoting *Lynn v. Deaconess Med. Ctr.-West Campus*, 160 F.3d 484, 488 (8th Cir. 1998), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011))). In *Lynn*, the Eighth Circuit explicitly rejected the notion that comparator analysis requires the compared employees to have engaged in the exact same offense. 160 F.3d at 488. "To require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach." *Id.*

A jury could reasonably conclude that the alleged offenses of Nurse Wheeler's proposed comparators were offenses of "comparable seriousness." As the Hospital's corporate representative Regina Bryan testified, one category of misconduct which could lead to termination by the Hospital without prior discipline is "gross misconduct," including "severe work performance problems." J.A. 411. Ms. Bryan cited, *inter alia*, negligence in the care of a patient and negligent medicine administration as being potentially considered "gross misconduct," which could lead to termination. Where, according to her termination letter, Nurse Wheeler was terminated for "poor work performance and failure to follow hospital policy and procedure," J.A. 109, it would be reasonable to view the basis for her termination as falling under the "gross misconduct" classification. Likewise, in accordance with Ms. Bryan's testimony, it would be reasonable to view the actions of the proposed comparators as potentially rising to the level of "gross misconduct" where

those alleged incidents could be characterized as negligence in the care of a patient or negligent medicine administration. Indeed, when asked whether some of the comparators' alleged mistakes would be considered "gross misconduct," Ms. Bryan testified that those circumstances could potentially be characterized as such.[2] And, as stated above, there does not have to be a history of prior failures in order for one major failure to be considered "gross misconduct." Thus, a jury could reasonably determine that Nurse Wheeler's misconduct was categorically similar to the misconduct of the proposed comparator nurses.

The Hospital here attempts to distinguish Nurse Wheeler from her proposed comparators on account of her prior history of performance issues, stating that because of these issues the other nurses could not be found to be similarly situated. To begin with, however, there was evidence that K.M. and C.S. *did* have prior performance issues that had led to either counseling or official discipline, according to the testimony of Nurse Hollandsworth. Moreover, Nurse's Wheeler's termination letter and the Hospital's interrogatory responses identified only the events of December 27 as the basis for her dismissal. The Hospital first pointed to Nurse Wheeler's past performance issues to explain her termination in October 2013, when Nurse Hollandsworth testified on behalf of the Hospital that "[f]or Ms. Wheeler, what led ultimately to her termination was a repeated pattern of poor work performance." J.A. 287. To the extent that the Hospital relies after-the-fact on Nurse Wheeler's prior work performance as a basis for her termination, that only bolsters her argument that her termination was in fact based upon

---

[2] The Hospital's response to Nurse Wheeler's reliance on Ms. Bryan's testimony in this regard is to suggest that their Rule 30(b)(6) witness should not be credited. This is not an appropriate response at the summary judgment stage.

pretext, as it suggests that the explanation has shifted over time. *See Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (when an employer's justification for terminating an employee varies over time, "[s]uch shifting and inconsistent justifications are probative of pretext" (quotation marks omitted)). To the extent the Hospital is *not* relying on her past performance as a basis for termination, however, the Hospital cannot try to turn around and use past performance issues as a basis upon which to distinguish Nurse Wheeler from similarly situated nurses who were not terminated for their missteps. The Hospital simply cannot have it both ways.

Our decision is bolstered by the identification by the Hospital in its interrogatory responses of all of the nurses who had been disciplined by Nurse Hollandsworth in the past five years. None of the nurses identified by Nurse Wheeler as having made similar mistakes was on that list. But what is even more striking is that, according to Nurse Wheeler's deposition testimony, none of the nurses on that list is white. Thus, a jury could reasonably find that Nurse Hollandsworth had a history of only disciplining non-white nurses, and the Hospital did not terminate any of the white nurses who allegedly committed the same class of infraction as Wheeler.

In view of all the evidence, we cannot say that no rational and reasonable jury could find these nurses to be comparable to Nurse Wheeler. *See Lynn*, 160 F.3d at 488. A jury could reasonably compare other nurses, who each made a mistake that might rise to the level of "gross misconduct," with Nurse Wheeler. To be clear, the Hospital has not presented evidence that conclusively undermines the veracity of Nurse Wheeler's descriptions of the misconduct of the proposed comparators. Nor has it presented undisputed evidence that Director Howell and GUH Human Resources did not play a role in the discipline (or lack thereof) of each of the proposed

comparators. As Rule 56 instructs, a movant may assert that a fact cannot be genuinely disputed by "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). In the face of the evidence presented by Nurse Wheeler, raising genuine issues of material fact, the Hospital has failed to show that the evidence does not establish a genuine dispute. As such, summary judgment is not warranted.

## IV.

For the foregoing reasons, the Hospital's motion for summary judgment should have been denied. We reverse the judgment of the District Court and remand for further proceedings.

*So ordered.*